IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2005

## DAVID JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26817     John P. Colton, Jr., Judge**

---

**No. W2004-02170-CCA-R3-PC  - Filed July 27, 2005**

---

The petitioner appeals the denial of post-conviction relief.  Specifically, he contends that trial counsel was ineffective in (1) failing to discover the true identity of the State's primary witness at an earlier date; and (2) failing to adequately meet with him in preparation for trial.  Upon review, we conclude that the petitioner has failed to meet his burden with respect to both claims; therefore, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Charles W. Gilchrist, Jr., for the appellant, David Johnson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Douglas G. Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

Following a jury trial, the petitioner, David Johnson, was convicted of second degree murder (a Class A felony) and was sentenced as a Range II, multiple offender, to thirty-seven years in the Department of Correction.  A panel of this court affirmed the conviction and sentence on direct appeal.  See State v. David Johnson, No. W1998-00687-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 222 (Tenn. Crim. App., at Jackson, Mar. 14, 2001), reh'g denied (Tenn. Crim. App., May 3, 2001).  On October 4, 2002, the petitioner filed a *pro se* petition for post-conviction relief. Thereafter, counsel was appointed to represent the petitioner, and an amended petition was filed. The post-conviction court held a hearing on the matter on April 22, 2004, and subsequently denied the petition by written order.

The facts underlying the conviction were summarized in this court's direct appeal opinion:

The events that form the basis for the defendant's prosecution and conviction unfolded in the late summer of 1996. On the evening of September 21, at approximately 10:30 p.m., David Payne was shot in the back at point-blank range outside his sister's home. He died shortly thereafter from blood loss occasioned by the shooting.

The victim's sister, Mattie Pope, lived at 929 North Seventh Avenue in Memphis, Tennessee. The victim often visited with her on the weekends, and the weekend of September 21 was no exception. Several other people also were visiting that day. Shortly before the shooting, Ms. Pope and her guests were outside her home, some standing and others sitting in chairs on the front porch. The victim had decided it was time to leave, and he walked to his car that was parked in the driveway along the side of the house. As the victim prepared to unlock the car door, a man appeared and walked up to the victim on the driver's side of the car. Words were exchanged between the victim and the man. The victim then turned to leave, at which point the other man discharged a firearm into the victim's back. The victim managed to walk up to the porch and inside the house before collapsing in the bathroom floor and dying.

Ms. Pope could not identify the person who killed her brother. The only description she could provide was that the shooter was a black male of medium height with a jherri curl who was wearing dark clothing. The only part of the exchange between the victim and the shooter that she heard was the victim's remark that he "didn't have any."

Of those present at Ms. Pope's house when the shooting occurred, the only other person who testified for the state was Mary Payne, the victim's niece. Ms. Payne was the sole prosecution witness who could identify the defendant as the individual who killed the victim. The state did not produce or introduce the firearm used to commit the murder, and no other physical evidence connected the defendant to the murder.

 . . .

The defense launched a vigorous attack on the credibility of [Payne], which included forays into her crack cocaine addiction, her prior convictions for attempted aggravated assault, forgery, possession of cocaine with intent to sell, prostitution, and her impersonation of her sister, Carolyn Pope. The impersonation came about when the police questioned her in connection with the victim's shooting; because there were warrants outstanding for her arrest, Mary Payne misrepresented her real identity to the police.

-2-

Johnson, 2001 Tenn. Crim. App. LEXIS 222, at \*\*4-7.

During the redirect examination of Payne, a mistrial was declared. The petitioner was subsequently re-indicted on the charge of first degree murder and convicted of the lesser included offense of second degree murder.

At the post-conviction hearing, the petitioner testified that counsel met with him two or three times in jail and during court appearances. He further stated that counsel did not adequately investigate Payne's credibility and that he did not think that the defense was "fully prepared" to go forward. Although the petitioner acknowledged that counsel attempted to impeach Payne's credibility with prior convictions, he maintained that counsel could have discovered that Payne falsely identified herself earlier in the investigation.

On cross-examination, the petitioner explained that counsel met with him two or three times in jail and two or three times in court. He further reiterated that counsel attempted to impeach Payne with her criminal record but was overruled by the trial judge. The petitioner testified that counsel attempted to find two alibi witnesses and that she located and interviewed one of them. He also admitted that counsel filed and argued motions on his behalf, including a motion to have the second indictment dismissed.

Counsel testified that she was employed by the Shelby County Public Defender's Office and that she was appointed to represent the petitioner at trial. She further recalled that she visited the petitioner at least eight times in jail and more than eight times in court. Counsel stated that the petitioner's defense was that Payne was lying and that the petitioner did not commit the murder. Regarding Payne's credibility, counsel noted that she "tried to impeach her in every way that [she] could." Specifically, she testified that she impeached Payne with her prior record and with the fact that she falsely identified herself to investigating officers.

Counsel stated that she interviewed all of the witnesses listed on the back of the indictment, as well as an individual named Raymond Webb. She testified that after her interview with Webb, she determined that he would not be a good alibi witness because he was not with the petitioner the entire evening; that he told the petitioner that "word on the street" was the petitioner had shot the victim; and that he had smoked crack with the petitioner on the evening of the murder. Counsel stated that she also interviewed Raymond Jones, who was listed by the petitioner as a potential alibi witness; however, she elected not to call him to testify because he could not testify as to the petitioner's whereabouts the entire evening of the murder. Counsel testified that after discussing the matter with the petitioner and considering his wishes, she elected not to call any witnesses for the defense.

On cross-examination, counsel testified that prior to the petitioner's trial she had conducted four or five jury trials, including one first degree murder trial. Counsel recalled that Payne had an outstanding warrant for a violation of probation, which was dismissed after her testimony in the first

trial. She further noted that she attempted to use that information to impeach Payne. When asked if she would have done anything differently with regard to the petitioner's case, counsel responded, "I can't think of anything. I put a lot of work into this case. And I think I explored every avenue. I think I filed every motion that I could file. I can't think of anything."

Following the hearing, the post-conviction court denied the petition, setting forth its findings by written order. Particularly, with regard to counsel's meetings with the petitioner and the impeachment of Payne, the court noted:

> In the case at bar, Petitioner contends trial counsel, [], was ineffective because she failed to object to his photo lineup, impeach the State's star witness, and failed to research and adequately prepare for trial, e.g., failing to secure alibi witnesses and meeting sporadically with him. [Counsel] however testified that she met with Petitioner at least eight times from July 3, 1997 to January 2, 1998 in preparation for the trial. [Counsel] also testified that she did attempt to discredit the State's star witness but was unsuccessful even though she set forth facts that said [the] witness lied to the police at the scene of the crime and the witness had a prior criminal history.
>
> . . . .
>
> By Petitioner's own testimony, it is evident that trial counsel['s] performance was not ineffective. Petitioner conceded that [counsel] tried to discredit the State's star witness with her past criminal record but the trial judge denied the admission of that record. The decision to admit or deny such evidence was wholly in the discretion of the trial court. . . . More importantly, when asked whether [counsel] could have done anything differently, Petitioner responded, "I really don't know."

Based in part upon that reasoning, the post-conviction court denied relief. The petitioner now appeals to this court, contending that (1) counsel should have discovered Payne's true identity earlier in her investigation so that she could have effectively cross-examined her; and (2) counsel did not adequately visit him in preparation for trial. Upon review, we conclude that the petitioner has not proven, by clear and convincing evidence, that counsel was ineffective. Therefore, we affirm the post-conviction court's denial of relief.

Analysis

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show that (1) counsel's performance was deficient; and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of

competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

The petitioner bears the burden of proving the factual allegations that would entitle the petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the post-conviction court's conclusions of law – such as whether counsel's performance was deficient or whether that deficiency was prejudicial – are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

The petitioner first contends that counsel should have discovered Payne's true identity earlier in the investigation so that she could have effectively cross-examined Payne. However, as the petitioner conceded and the post-conviction court noted, counsel discovered Payne's true identity within the course of her investigation and attempted to impeach her with prior convictions and Payne's false self-identification to police. Moreover, the petitioner has failed to state, and we fail to see what benefit would have resulted to the petitioner had counsel discovered Payne's misrepresentation earlier. Therefore, the petitioner has failed to carry his burden with respect to either prong of the Strickland analysis.

The petitioner also contends that counsel failed to adequately meet with him in preparation for trial. However, at the post-conviction hearing, counsel testified that she met with the petitioner at least eight times in jail and more than eight times in court. We agree with the post-conviction court that counsel's actions in this regard were certainly sufficient and did not amount to ineffective assistance of counsel.

Conclusion

We affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, JUDGE